**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **GENE'S MACHINE, INC.**, *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. V-11-4** |
| | § | |
| **DEPARTMENT OF HOMELAND** | § | |
| **SECURITY,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Gene's Machine, Inc. ("Gene's Machine") and Mark Wood, Tracy Wood, Craig Wood, and J.W. ("the Woods") (collectively "Plaintiffs") brought this action against Defendants Janet Napolitano, as Secretary of the Department of Homeland Security (DHS); Alejandro Mayorkas, as Director of United States Citizenship and Immigration Services (USCIS);[1] Hilda L. Solis, as Secretary of the United States Department of Labor (DOL); and David L. Roark, as Director of the USCIS—Texas Service Center (USCIS—TSC), (collectively "Defendants") under the Declaratory Judgment Act, 28 U.S.C. § 2201; the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 706 *et. seq*., alleging that Defendants wrongfully denied the Form I-140 Immigrant Petition for Alien Worker ("I-140 petition") that Gene's Machine filed on behalf of Mark Wood, an alien who Gene's Machine seeks to employ.

Now pending before the Court is Defendants' Motion Dismiss (Dkt. No. 7), to which Plaintiffs have responded (Dkt. No. 10), Defendants have replied (Dkt. No. 14), and Plaintiffs have filed a surreply (Dkt. No. 17). Both sides also filed supplemental authority with the Court

---

1.  USCIS is a component of DHS and performs many administrative functions formerly carried out by the legacy United States Immigration and Naturalization Service (INS), which was part of the Department of Justice.

(Dkt. Nos. 20, 21). Having considered the motion, responses, replies, record, and applicable law, the Court is of the opinion that Defendants' motion should be **GRANTED**.

## I. Regulatory Background

An alien cannot work in the United States without the appropriate authority from USCIS. One way for an alien to receive permission to work is for an employer to submit an I-140 petition with USCIS. Before an employer files a petition with USCIS for the issuance of a visa, the employer first must submit an Application for Permanent Employment Certification with DOL, also known as a Form ETA–750, which identifies the job opportunity and the employer's minimum job requirements. *See* 20 C.F.R. § 656.21 (2004).

The Secretary of Labor ("the Secretary") must then issue a labor certification in conformity with 8 U.S.C. § 1182(a)(5)(A)(i), which provides as follows:

> Any alien who seeks to enter the United States for the purpose of performing skilled or unskilled labor is inadmissible, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that[:] (I) there are not sufficient workers who are able, willing, qualified (or equally qualified in the case of an alien described in clause (ii)) and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (II) the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed.

8 U.S.C. § 1182(a)(5)(A)(i)(I).

One way DOL determines whether to grant a labor certification is for it to test the labor market by advertising the job through the local Employment Service Office. 20 C.F.R. § 656.21(b). If that recruitment effort is unsuccessful, the labor certification is likely to be granted. *Id.* A faster process for labor certification, called "reduction in recruitment," involves the employer filing documentary evidence that it has made good faith efforts to recruit workers in the U.S. within the preceding six months through sources normal to the occupation, and that

further recruitment will be unsuccessful. 20 C.F.R. § 656.21(i). The labor certification may then be approved without further recruitment efforts through the local Employment Service Office.

If the Secretary grants the labor certification, she returns the original certified application to the employer. 20 C.F.R. § 656.24(d). Once an employer has received an approved original labor certification, the employer may file an I-140 petition with the Attorney General. 8 C.F.R. § 204.5. The employer must submit the labor certification with the I-140 petition, and the petition must describe the special training or talent of the specific alien for whom the application is made and the paucity of available similar workers in the United States. *Id.* § 204.5(a)(2); *see also* 8 U.S.C. §§ 1153(b)(2)-(3) & 1154(a)(1)(F). Upon approval of an I-140 petition, the named alien receives a visa that allows him to work for the named employer. *See* 8 C.F.R. § 204.5(n). An alien with an I-140 visa can then petition for adjustment of his status to that of permanent resident through Form I-485, if he so chooses. *See* 8 U.S.C. § 1255.

Previously, with one exception not relevant here, the relevant regulation provided that approved labor certifications were "valid indefinitely." 20 C.F.R. § 656.30(a). However, following notice-and-comment rulemaking procedures, 20 C.F.R. § 656.30 was amended on May 17, 2007 (with an effective date of July 16, 2007) to provide:

> For certifications resulting from applications filed under this part and 20 CFR part 656 in effect prior to March 28, 2005, the following applies: (1) An approved permanent labor certification granted on or after July 16, 2007 expires if not filed in support of a Form I-140 petition with the Department of Homeland Security within 180 calendar days of the date the Department of Labor granted the certification. (2) An approved permanent labor certification granted before July 16, 2007 expires if not filed in support of a Form I-140 petition with the Department of Homeland Security within 180 calendar days of July 16, 2007.

20 C.F.R. § 656.30(b)(1)-(2). *See also* 71 Fed. Reg. 7656—60 (February 13, 2006).

According to DOL, one reason the regulation was amended was to curb the emerging "black market" in labor certifications, wherein "labor certifications [that] never expire . . . can be

traded indefinitely and sold to the highest bidder." 71 Fed. Reg. 7659. Another reason for

creating a fixed period for the validity of labor certifications was to "more closely adhere[ ]" to

the statutory requirement that DOL gauge the availability of able, willing, and qualified workers

"at the time of application for a visa." 72 Fed. Reg. 27924. DOL further stated that "[l]abor

market conditions are subject to rapid change, and it is consistent with DOL's mandate under [§

1182(a)(5)(A)(i)(I)] to require a retest of the market after the passage of [180 calendar days]." *Id.*

Finally, DOL concluded that "[t]he imposition of a validity period is a logical mechanism by

which the Department can ensure that the information upon which a determination was based

remains legitimate." 72 Fed. Reg. 27925.

## II. Factual Background

According to the facts as set forth in Plaintiffs' Original Complaint (Dkt. No. 1), the

Woods were initially admitted to the United States through the Visa Waiver Program on January

20, 1998 for an authorized period of stay through April 19, 1998. On April 15, 1998, attorney

Justice B. Adjei ("Adjei") filed a Form I-539 Application to Extend Non-Immigrant Status for

the Wood family. On July 16, 1998, INS denied the petition on the grounds that an alien

admitted to the United States through the Visa Waiver Program "is not eligible for extension of

his or her authorized period of temporary stay in the United States; is not eligible for adjustment

of his or her status pursuant to section 245 of the Act, other than as an immediate relative as

defined in section 201(b) of the Act or under the provisions of section 245(i) of the Act; and is

not eligible for change of nonimmigrant status pursuant to Section 248 of the Act." 8 C.F.R. §

217.3(a).

On April 20, 1998, Gene's Machine, through attorney Adjei, filed a Form ETA-750

Application for Permanent Employment Certification with DOL on behalf of Mark Wood. As

noted in Part I, *supra*, in order to obtain the approved labor certification, the U.S. employer must

go through a complicated and expensive recruitment process following the regulations at 22 C.F.R 656. Gene's Machine went through this recruitment process immediately after filing the application on April 22, 1998.

On June 24, 1998, Gene's Machine, again through Adjei, filed an I-129 Petition for a Nonimmigrant Worker seeking H-1B nonimmigrant status as a temporary worker for Mark Wood after Adjei incorrectly told Mark Wood that he was eligible for a change of nonimmigrant status from his admission under the visa waiver program to H-1B nonimmigrant temporary worker status. On November 19, 1998, INS denied the H-1B petition on the grounds that a foreign national admitted under the Visa Waiver Program is not eligible for any such immigration benefit. As a result, in May 1999, the Woods returned to the United Kingdom.

The Woods returned to the United States on January 11, 2000—again through the Visa Waiver Program—to attend a wedding. Adjei counseled Mark Wood that he would be eligible to adjust status through an employment-based visa petition based on the labor certification petition Gene's Machine had filed in 1998 if Gene's Machine was still willing to petition for Mark Wood. According to the Complaint, Gene's Machine was fully willing to petition for Mark Wood.

On June 28, 2000, the Alien Labor Certification Unit of the Texas Workforce Commission sent Adjei a letter requesting amendments on the Forms ETA 750 Parts A and B accompanying Gene's Machine's labor certification petition. The Complaint does not state whether the forms were ever amended. On October 25, 2002, the DOL Employment and Training Administration Dallas Backlog Elimination Center ("Backlog Center") informed Gene's Machine that the labor certification petition had been forwarded to its office on February 1, 2001 and granted Gene's Machine 45 days to notify the Backlog Center as to whether it wished to continue with the labor certification process.

5

On February 22, 2005, the Backlog Center informed Gene's Machine that its labor certification petition would be processed. On July 19, 2006, the Backlog Center wrote Adjei another letter granting 14 calendar days from the date of the letter to respond to issues on an Analyst Finding List related to the labor certification petition. The Complaint does not state whether Gene's Machine ever responded to these issues. On February 6, 2007, the Backlog Center again wrote Adjei, this time requiring Gene's Machine to place advertisements in a newspaper in the area of intended employment to conduct a new recruitment process, even though Gene's Machine claims it followed all the requirements of the recruitment process in 1998 when it initially filed the labor certification application. Then on March 26, 2007, the Backlog Center sent Adjei another letter with further instructions.

On May 17, 2007, DOL published its final rule in the Federal Register amending its regulations at 20 CFR Part 656 and requiring that an I-140 petition be filed within 180 days after the supporting labor certification is approved by DOL (hereinafter "180-Day Rule"). *See* 72 Fed. Reg. 27904 (May 17, 2007). *See also supra*, Part I. The 180-Day Rule became effective July 16, 2007. Also on May 17, 2007, DOL certified Gene's Machine's labor certification application. The final determination stated that Gene's Machine's certified application must be attached to its I-140 petition along with any other required evidence, and must be filed with USCIS. However, the final determination did not mention the new 180-Day Rule.

Although Gene's Machine's I-140 petition was due on January 12, 2008, Adjei did not file the petition until January 16, 2008.[2] As a result, USCIS—TSC immediately sent Adjei a letter stating that it was unable to process the I-140 petition because the labor certification was issued more than 180 days before USCIS received the I-140 petition. On January 28 and 29,

---

2. Plaintiffs hypothesize that "it is possible that attorney Adjei initially filed the I-140 application timely but to the wrong filing location," since "[a]pparently, Adjei had sent an I-140 application twice before to the incorrect Service Center for filing and the application was rejected." (Compl. ¶ 50.) However, Plaintiffs appear to abandon this contention in later filings.

2008 and April 11, 2008, Adjei sent emails to DOL admitting that he did not know about the 180-Day Rule and did not know that any new labor certification would not carry the same priority date and would require a new recruitment process. During that timeframe, Adjei also receved correspondence from USCIS—TSC and DOL indicating that the original approved labor certification had expired and was no longer valid.

After USCIS refused to process its January 16, 2008 I-140 petition, Gene's Machine filed additional I-140 petitions requesting USCIS approval based on the original approved labor certification. On April 20, 2009 and May 4, 2009, TSC—USCIS sent letters to Gene's Machine's new attorney, Sunita Thereja Kapoor ("Kapoor"), stating that it was unable to process the successive I-140 petitions it had received because they were filed without a valid labor certification.

On May 14, 2009, Kapoor filed another I-140 petition with TSC—USCIS on Gene's Machine's behalf, which was also based on the same labor certification that was approved on May 17, 2007 (hereinafter "May 2009 I-140 Petition" or "I-140 Petition"). In this filing, Gene's Machine also submitted documents arguing that Adjei had provided ineffective assistance of counsel and showing that Mark Wood had filed a complaint against Adjei with the State Bar of Texas. On July 9, 2009, TSC—USCIS denied the I-140 Petition on its merits. TSC—USCIS once again cited the 180-Day Rule and stated that the I-140 Petition was filed without a valid approved labor certification. The decision denying the May 2009 I-140 Petition did not discuss Gene's Machine's argument regarding ineffective assistance of counsel.

### III. Plaintiffs' Causes of Action

Plaintiffs first allege that Defendant DOL violated the Fourteenth Amendment when it failed to give them actual notice of the 180-Day Rule. Plaintiffs further claim DOL violated the APA because: (1) DOL does not have the authority to specify a time period by which a U.S.

employer must file an I-140 petition, as this authority belongs to the Attorney General and DHS; and (2) the 180-Day Rule is arbitrary, capricious, and unreasonable. Finally, Plaintiffs allege that Defendants USCIS and USCIS—TSC violated the APA by arbitrarily and capriciously denying Gene's Machine's I-140 Petition without addressing the question of ineffective assistance of counsel in its denial.

## IV. Rule 12(b)(1) Motion to Dismiss for Lack of Standing

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a case against it for lack of jurisdiction over the subject matter. When federal courts consider questions of subject matter jurisdiction, the precedent regarding its fundamental importance is clear: "It is a fundamental principle that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "[A]bsent jurisdiction conferred by statute, [federal courts] lack the power to adjudicate claims." *See Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking. 'This is the first principle of federal jurisdiction.'" *Stockman v. Federal Election Commission*, 138 F.3d 144, 151 (5th Cir. 1998) (quoting HART & WECHSLER, THE FEDERAL COURTS AND THE FEDERAL SYSTEM 835 (2d ed. 1973)). Under Fifth Circuit precedent, a case may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US West Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997).

**B. Analysis**

Defendants argue that Mark Wood, as the intended primary beneficiary, and his family, as derivative beneficiaries, lack standing to contest the denial of the Form I-140 Petition because Gene's Machine filed the I-140 Petition, not any of the Woods. Accordingly, Gene's Machine is the only party with a personal stake in the outcome sufficient to warrant subject-matter jurisdiction in this Court.

Citing *Reddy, Inc. v. United States Department of Labor*, 492 F.2d 538 (5th Cir. 1974), Plaintiffs claim it is not necessary to address the question of whether the Woods have standing because Gene's Machine has independent standing to seek review. In *Reddy*, the Fifth Circuit distinguished its prior decision in *Cobb v. Murrell*, 386 F.2d 947 (5th Cir. 1967), which "determined that a federal court lacked power to review a decision of the Secretary of Labor denying § 1182(a)(14) certification where the action was brought by the potential employer and the alien denied certification was not a party to the action, was not present in the country, and was 'not on any border or ship asking for admission.'" *Reddy*, 492 F.2d at 542 (quoting *Cobb*, 386 F.2d at 949).  In *Cobb*, the alien in question had been removed prior to her employer's attempt to seek a labor certification on her behalf, but in *Reddy*, the plaintiff alien, "unlike the alien in Cobb, [was] a party to the action," and was also, "unlike the alien in Cobb, already *lawfully present in the United States* when he sought certification under § 1182(a)(14)." *Reddy*, 492 F.2d at 542 (emphasis added). In finding that the plaintiff alien did have standing to challenge the denial of a labor certification filed on his behalf, the *Reddy* court concluded that "it is beyond dispute that . . . an alien *lawfully resident in this country* at the time he sought § 1182(a)(14) certification[] is 'A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Id.* at 544 (quoting 5 U.S.C. §§ 701, 702) (emphasis added).

The Court finds that *Reddy* is not controlling here. First, the Woods are not challenging the denial of a labor certification by DOL, but are instead challenging USCIS and USCIS—TSC's denial of Gene's Machine's I-140 Petition. Moreover, a major factor in the Fifth Circuit's *Reddy* decision was the fact that the plaintiff alien was *lawfully present in the United States* at the time his employer sought certification. The facts set forth in Plaintiffs' Original Complaint show that the Woods were not *lawfully* present in the United States when Gene's Machine filed an application for employment certification on Mark Wood's behalf in 1998. (Compl. ¶¶ 15 & 16.) Likewise, the Woods were not *lawfully* present in the United States when Gene's Machine filed any of its several I-140 petitions in 2007, 2008, and 2009. (Compl. ¶¶ 50, 60.) To the contrary, the Woods have been *unlawfully* residing in the United States for more than a decade after "return[ing] to the United States again through the Visa Waiver Program on January 11, 2000 to attend a wedding," despite knowing that "[a] foreign national admitted under the Visa Waiver Program may only stay in the United States in nonimmigrant status for 90 days. (Compl. ¶¶ 12, 21, 28.)

Although the Fifth Circuit has not been confronted with the precise issue currently before the Court, district courts in other circuits have repeatedly held that the beneficiary of an immigrant petition lacks Article III standing to challenge the denial of that petition. As one court explained, "An employer 'is the party that petitioned for the visa, so it, and not [the alien employee] is considered the proper party having a personal stake in the outcome sufficient to warrant . . . invocation of federal court jurisdiction.'" *George v. Napolitano*, 693 F. Supp. 2d 125, 130 (D.D.C. 2010) (quoting *Ibraimi v. Chertoff*, 2008 WL 3821678, *3 (D.N.J. Aug. 12, 2008)); *see also Joseph v. Landon*, 679 F.2d 116—17 (7th Cir. 1982) ("[U]nder the regulations regarding appeals of visa revocations . . . , only the petitioner [], and not the beneficiary of the visa petition [], has standing to appeal."); *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 350—

51 n.7 (E.D.N.Y. 2010) (explaining that courts have "reasoned that beneficiaries cannot claim an invasion of their legally protected interests sufficient to establish that they suffered an injury in fact because, as aliens, they lack any constitutionally protected right to enter the United Sates as a nonimmigrant"); *Li v. Renaud*, 709 F. Supp. 2d 230, 236 n.3 (S.D.N.Y. 2010) ("A District Court action for judicial review of an administrative decision concerning a Form I–130 Petition may be brought only by the Petitioner . . . not by the Beneficiary."); *Blacher v. Ridge*, 436 F. Supp. 2d 602, 606 n.3 (S.D.N.Y. 2006) (considering only the due process rights alleged by employer because the employer, as "the petitioner, [was] the only party with standing to seek review of the petition's denial"); *Andros, Inc. v. United States*, 2010 WL 4983566, at *3 (W.D. Wash. Dec. 2, 2010) ("[D]istrict courts have held that an alien lacks Article III standing to challenge the denial of an immigration petition where the alien is not the petitioner but merely the beneficiary."); *Morris v. Gonzales*, 2007 WL 2740438, at * 6 (E.D. Pa. Sept. 19, 2007) (dismissing beneficiary on the grounds that petitioner was the only party with standing to seek review of the revocation of the beneficiary's visa).

Gene's Machine claims that "none of these cases are good law in the Fifth Circuit" because "[i]n *Ayanbadejo,* the Fifth Circuit held that both the U.S. citizen husband and the alien wife had subject matter jurisdiction to contest the denial of the I-130 family immigrant visa petition." (Dkt. No. 17 at 2 (citing *Ayanbadejo v. Chertoff*, 517 F.3d 273 (5th Cir. 2008).) Gene's Machine's reading of *Ayanbadejo* case is mistaken. *Ayanbadejo* involved a Form I-130 Petition for Alien Relative that wife Felicia Malveaux Ayanbadejo, a U.S. citizen, filed on behalf of her husband, John Ayanbadejo, as well as a Form I-485 Application to Register Permanent Residence or Adjust Status that husband John filed on his own behalf. *Ayanbadejo v. Chertoff*, 462 F. Supp. 2d 736, 738 (S.D. Tex. 2006). The government moved the district court to dismiss both claims under Rule 12(b)(1) on the ground that they involved "a discretionary

determination over which federal judicial review is prohibited" by "the REAL ID Act of 2005, Pub.L. No. 109-13, Div. B, 119 Stat. 231 (May 11, 2005)." *Id.* at 741. The district court granted both motions and dismissed the case for lack of jurisdiction. *Id.* at 745. On appeal, the Fifth Circuit reversed the district court's decision "to the extent that it dismissed Felicia's I-130 petition for lack of jurisdiction" and explicitly "h[e]ld that determinations pertaining to I-130 petitions are not precluded from review by courts pursuant to § 1252(a)(2)(B)(ii)." *Ayanbadejo*, 517 F.3d at 279. Despite Gene's Machine's assertion to the contrary, the Fifth Circuit never addressed the issue of whether the husband beneficiary had standing to contest the denial of his wife's I-130 petition, as the issue was never raised by the parties.

Based on the plethora of case law cited above, the Court finds that Defendants USCIS and USCIS—TSC's denial of Gene's Machine's I-140 Petition could not have legally injured the Woods because any legally protected interest flowing from the I-140 Petition belongs to Gene's Machine, as it filed the petition. Although the denial of the petition could have caused an injury-in-fact to Gene's Machine, it could not have injured the Woods because it did not similarly result in an invasion of one of their legally protected interests.

Because the Woods lack standing in this suit, their claims are **DISMISSED**.

## V. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in her favor. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). A court may not look beyond the face of the pleadings to determine whether

relief should be granted based on the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737—38 (S.D. Tex. 1998). While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the Supreme Court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating the *Conley v. Gibson*, 355 U.S. 41 (1957) 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations omitted). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.*; *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

### B. Analysis

#### 1. Due Process Violation

Gene's Machine first claims DOL violated the Fourteenth Amendment when it failed to provide actual notice of the newly-promulgated 180-Day Rule.

As Defendants correctly point out, the Fourteenth Amendment applies only to state actors. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). As such, DOL cannot violate the Fourteenth Amendment. DOL further argues, and the Court agrees, that because Gene's Machine was afforded sufficient notice regarding the rule change via publication in the Federal Register, it would be futile to allow Gene's Machine to amend its complaint to state a claim under the Fifth Amendment.

Constitutional due process requires that notice be reasonably calculated to inform parties of proceedings that may directly and adversely affect their legally protected interests. *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956). "Assuming that the contents of the published notice are otherwise complete, it is well settled that publications in the Federal Register are deemed legally sufficient notice to all interested persons." *North Alabama Exp., Inc. v. United States*, 585 F.2d 783, 787 (5th Cir. 1978) (citing 44 U.S.C. § 1507; *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947)). This is true "regardless of actual knowledge or hardship resulting from ignorance, except those who are legally entitled to personal notice." *State of California ex rel. Lockyer v. F.E.R.C.*, 329 F.3d 700, 707 (9th Cir. 2003) (citing 44 U.S.C. § 1507; *Camp v. United States Bureau of Land Mgmt.,* 183 F.3d 1141, 1145 (9th Cir. 1999)).

Here, DOL has presented evidence that, in addition to publishing the 180-Day Rule in the Federal Register on May 17, 2007, it published a notice of proposed rulemaking in the Federal Register on February 13, 2006—over a year before the rule was published. 72 Fed Reg. 27904; 71 Fed. Reg. at 7663. After considering public comments, DOL gave notice of its 180-Day Rule. 72 Fed. Reg. at 27946. USCIS also issued a public notice in June 2007, along with a publicly available memorandum on the agency's website, discussing how the new rule would affect the filing of I-140 petitions. *See* Donald Neufeld, USCIS Acting Associate Director, Service Center Operations, *Interim Guidance Regarding the Impact of the Department of Labor's Final Rule* (June 1, 2007), available at *http://www.uscis.gov/USCIS/Laws%20and%20Regulations/ Memoranda/June%202007/DOLPermRule060107.pdf* (last visited March 26, 2012). The 180-Day Rule went into effect on July 12, 2007—60 days after publication in the Federal Register. 72 Fed. Reg. at 27904.

Gene's Machine admits that DOL published the 180-Day Rule on May 17, 2007. (Compl. ¶ 52.) Gene's Machine further concedes that "[o]rdinarily, publication in the Federal Register is

14

sufficient to give notice to a person subject to it or affected by it." (Compl. ¶ 72 (citing 44 U.S.C. § 1507).) However, Gene's Machine claims that DOL was nonetheless required to provide Plaintiffs with "actual notice of the drastic new rule" because: (1) Gene's Machine "had obediently been responding to every communication from [DOL] since the initial filing of the labor certification on April 20, 1998" (Compl. ¶ 74); (2) DOL published the rule "on the same date that it issued its approval of the labor certification in question" (*Id.*); and (3) although Gene's Machine "did not have any right to an approved Form I-140," it "had a protected property interest in [its] expectation that . . . [it] would be afforded procedural due process by the Defendants as to be able complete the three-step process regardless of outcome." (Dkt. No. 10 at 7 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Williams v. Mukasey*, 531 F.3d 1040, 1042 (9th Cir 2008)).)

The Western District of Washington recently rejected an identical argument by plaintiffs "that it was an abuse of discretion for DOL to apply the 2007 regulation to them, as they had no notice of the potential expiration of the 2002 certification." *Elim Church of God v. Solis*, 2011 WL 5873264, *4 (W.D. Wash. Nov. 11, 2011). In finding that the argument was "without merit," the court explained that "Plaintiffs received legally sufficient notice of the change by publication of the proposed rule change and notice of the final rule in the Federal Register." *Id.* The Court further noted that, much like the case here, "[i]t appears that it was former counsel's lack of diligence, rather than a lack of notice, which led [to] plaintiffs' failure to timely submit their visa application." *Id.*

With respect to Gene's Machine's claim that it was due actual notice of the amended rule because it had a "property interest" in being able to "complete the three-step process regardless of outcome," the Court finds this argument to be without merit. As explained in *Masih v. Mukasey*, 536 F.3d 370, 373—74 (5th Cir. 2008), this three-step process requires an approved I-

140 petition. Without an approved I-140 petition, there is no possibility of reaching the third step of Mark Wood filing a Form I-485 Application to Register Permanent Residence or Adjust Status. *Id. See also Silva Rosa v. Gonzales*, 490 F.3d 403, 407 (5th Cir. 2007) ("[T]he right to adjust status . . . [is] not vested when an applicant only completes the first of several steps to become eligible for discretionary relief, such as filing a labor certification petition."). Absent a right to an approved I-140 petition—which Gene's Machine concedes it does not have—there is no right to any "expectation" that Mark Wood might complete this "three-step process."

The Court finds that because Gene's Machine does not have a constitutionally protected interest in obtaining an approved I-140 petition, its claim that DOL failed to provide the requisite notice regarding the 180-Day Rule must fail. Accordingly, Gene's Machine's due process claim is **DISMISSED**.

### 2.  Claims under the APA

Gene's Machine claims DOL violated the APA because: (1) DOL does not have the authority to specify a time period by which a U.S. employer must file an I-140 petition, as this authority belongs to the Attorney General and DHS; and (2) the 180-Day Rule is arbitrary, capricious, and unreasonable. Gene's Machine further alleges that USCIS and USCIS—TSC violated the APA by arbitrarily and capriciously denying its May 2009 I-140 Petition without addressing the issue of ineffective assistance of counsel in its denial. As such, Gene's Machine asks the Court to "enter an order issuing an affirmative injunction commanding the Defendants to immediately vacate Defendants' denial of Plaintiffs' application for an I-140 immigrant visa petition and to process it immediately so that Plaintiff Mark Wood may upon approval file an I-485 application for lawful permanent residence." (Compl. ¶ 99.)

Under the APA, an individual is entitled to judicial review of an agency decision if he "suffer[s] [a] legal wrong because of agency action, or [is] adversely affected or aggrieved by

agency action within the meaning of a relevant statute . . . ." 5 U.S.C. § 702. Reviewing courts also have a duty to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, a federal court can reverse an agency's decision only if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A); *Medellin v. Bustos*, 854 F.2d 795, 799 (5th Cir. 1988).

An agency's interpretation of its own regulations is entitled to a high degree of deference. *Ashbrook-Simon-Hartley v. McLaughlin*, 863 F.2d 410, 414 (5th Cir. 1989). "A reviewing court will consider whether there has been a clear error of judgment by the agency and whether the agency action was based on the consideration of all relevant factors, but the court may not substitute its own judgment for that of the agency." *Id.* (citing *Kwan v. Donovan,* 777 F.2d 479, 480 (9th Cir. 1985)).

### a. Gene's Machine's Claim that the 180-Day Rule is Arbitrary, Capricious, Unreasonable, and Without Proper Authority

Gene's Machine argues that DOL does not have authority to specify a time period by which a U.S. employer must file an I-140 petition because Congress has given the Attorney General specific authority regarding nonimmigrants. *See* 8 U.S.C. § 1184(a)(1) ("The admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe . . . ."). Gene's Machine further claims that the 180-Day Rule "invades the province of DHS, as it is the DHS that adjudicates the I-140." (Dkt. No. 10 at 4.) Finally, Gene's Machine claims the 180-Day Rule is arbitrary, capricious, and unreasonable because: (1) it provides no exception; (2) it does not allow USCIS to act on its own motion to make a new favorable decision to the affected party; (3) DOL gave no specific reason as to why the deadline should be exactly 180 days; and (4) it can take years for a visa to become available under the preference system quota.

The plaintiffs in *Durable Manufacturing Co. v. United States Department of Labor*, 578 F.3d 497 (7th Cir. 2009), made similar allegations against DOL regarding the 180-Day Rule. In rejecting these arguments, the *Durable Manufacturing* court explained:

> Under § 1182(a)(5)(A)(i), the Secretary of Labor must make two substantive determinations before issuing a labor certification: 1) there is an insufficient number of able, willing, qualified, and available workers (hereinafter "sufficient workers determination"); and 2) employment of the alien will not adversely affect the wages and working conditions of similarly situated workers. Of key importance here, when making the sufficient workers determination, the Secretary must certify that the supply of such workers is insufficient at a specific point in time: "at the time of application for a visa and admission to the United States." 8 U.S.C. § 1182(a)(5)(A)(i)(I). By declaring approved labor certifications indefinitely valid without any linkage to the filing of a visa petition, the earlier version of § 656.30(a) did not apply the statutory provision that the sufficient workers determination be made "at the time of application for a visa." Section 656.30 was amended so that a labor certification expires if not filed in support of a visa application within 180 days of the certification's approval. Thus, DOL implemented § 1182(a)(5)(A)(i)(I) by imposing a time limit between the certification and the visa application. Put another way, DOL's imposition of that time limitation on the validity of a labor certification ensures that the sufficient workers determination reflects the state of the labor market at the time the anticipated employee's application for a visa and admission is made. Assuming that DOL possessed statutory authority to promulgate regulations pertaining to labor certifications, then the amended § 656.30(b) is within the scope of DOL's authority because it complies with the explicit language from § 1182(a)(5)(A)(i)(I).

*Durable Mfg. Co.*, 578 F.3d at 501—02. "Thus," the court went on to explain, "the amended § 656.30(b) ensures that the snapshots of the labor market taken when labor certifications are approved are not stale appraisals of the labor market when the visa petitions are filed." *Id.*

Gene's Machine further complains that "[p]reviously, a labor certification remained valid indefinitely. 20 C.F.R. § 656.30(a)(1987). Thus, under the amended regulation, a **permanent** labor certification is not **permanent** unless it is filed within 180 days." (Dkt. No. 10 at 12 (emphasis in original).) The plaintiffs in *Durable Manufacturing* also argued that their labor certifications, which were approved before July 16, 2007, "were valid permanently and thus gave them a vested right to file employment-based visa petitions supported by such certifications *at*

*any time.*" *Durable Mfg*, 578 F.3d at 503 (emphasis in original). In rejecting this argument, the court reasoned:

> [T]he earlier version of § 656.30(a) promulgated by DOL . . . simply stated that approved labor certifications were valid "indefinitely." The plaintiffs' characterization of their labor certifications as permanently valid is unfounded. In common usage, the term "indefinite" means "having no exact limits; indeterminate in extent or amount; not clearly fixed." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1147 (2002). Thus, labor certifications approved under the old regulation were not valid permanently, but only so long as no definite period of validity was fixed by DOL. By definition, then, any "right" that the plaintiffs may have obtained to file their approved labor certifications in support of visa petitions at any time they chose was coextensive with the duration of the "indefinite" regulation. When DOL amended § 656.30(b) essentially to establish a 180-day time limit for previously approved labor certifications, the plaintiffs' right to the certifications' indefinite validity ended. Therefore, upon the approval of the updated § 656.30(b), the plaintiffs did not possess any vested right that the amended regulation could impair. Similarly, any expectations that the plaintiffs had regarding the continued validity of their labor certifications were not settled due to the unfixed character of the old regulation.

*Id. See also Elim Church of God*, 2011 WL 5873264, at *4 ("The fact that a certification is 'valid indefinitely' does not mean it is valid 'forever.'").

Although the Fifth Circuit has not addressed this exact issue, several years before the 180-Day Rule was promulgated, the court stated in dicta that it "d[id] not doubt the truth of [DOL's] assertion" that "market conditions are subject to rapid change and that labor certifications should be retested after the passage of six months." *Medellin v. Bustos*, 854 F.2d 795, 798 (5th Cir. 1988). The court further stated that it did not "doubt that the Secretary has the authority to require a section 212(a)(14) inquiry every six months as an incident to the issuance of all labor certificates." *Id*.

As a final matter, the Court notes that it has taken judicial notice of a May 22, 1996 Memorandum from the Office of the Inspector General of DOL submitted by Gene's Machine (Dkt. No. 17, Ex. 3, *available at* http://www.oig.dol.gov/public/reports/oa/pre_1998/06-96-002-03-321.pdf (last visited March 23, 2012)), as well as excerpts from U.S. Department of State

Visa Bulletins from May 2007 and February 2011, attached as exhibits to Plaintiffs' Motion that the Court Take Judicial Notice of Facts (Dkt. No. 17, Exs. 6 & 7, *available at* www.travel.state.gov/visa/bulletin/bulletin_1770.html (last visited March 26, 2012)).  However, the Court does not agree with Gene's Machine's assertion that statements contained in the May 1996 memorandum constitute "admissions against interest" by DOL that the 180-Day Rule— which was instituted more than 10 years after the memo was written—"does not meet [Congress'] legislative intent." (Dkt. No. 17 at 7.) The Court does not find data offered by Gene's Machine regarding the actual availability of visas in May 2007 and June 2011 to be relevant, since the congressional mandate refers to the time of *application*—not receipt—of a visa. 8 U.S.C. § 1182(a)(5)(A)(i)(I). An employer can apply for a visa on the alien's behalf immediately after the labor certification is approved by filing a I-140 petition. *See* 8 C.F.R. § 204.5(n). Finally, although it often takes several years for an alien to receive a visa or adjust his status, that does not mean DOL is powerless to take any steps to ensure that its analysis of the labor market is as current as possible or to otherwise address the problems caused by indefinitely valid labor certifications identified in Part I, *supra*.

Based on the foregoing authority, the Court finds that the promulgation of the 180-Day Rule is within the scope of DOL's authority, and the rule is neither arbitrary, nor capricious, nor unreasonable. Accordingly, Gene's Machine's claims against DOL are **DISMISSED**.

### b.  Gene's Machine's Claim that USCIS and USCIS—TSC's Denial of its I-140 Petition was Arbitrary, Capricious, and Unreasonable

Finally, Gene's Machine complains that Defendants USCIS and USCIS—TSC wrongfully denied its May 2009 I-140 Petition even though Gene's Machine had submitted evidence that it filed a bar complaint against former attorney Adjei for failing to file a I-140

petition before the accompanying labor certification expired. Gene's Machine further alleges that it had a right to effective assistance of counsel under both the Fifth and Sixth Amendments throughout the application process, and its former attorney's negligence should equitably toll the validity period of its 2007 labor certification. For this reason, Gene's Machine claims it was arbitrary, capricious, and unreasonable for USCIS and USCIS—TSC to refuse to process its I-140 Petition without considering its ineffective assistance of counsel argument.

### i. Equitable Tolling

For attorney error to justify equitable tolling, the professional mistake must "amount to egregious behavior" and "create an extraordinary circumstance." *Brown v. Thaler*, 2011 WL 6156883, *4 (5th Cir. Dec. 12, 2011). "'[A] garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Id.* (quoting *Holland v. Florida,* —— U.S. ——, 130 S.Ct. 2549, 2563 (2010)). Because "[t]he facts of this case do not rise to the level of egregious behavior but are more akin to missing a filing deadline," the Court finds that Gene's Machine is not entitled to equitably toll the validity period of its 2007 labor certification. *See id.*

### ii. Ineffective Assistance of Counsel

"It is well settled that, because [immigration proceedings] are considered civil in nature, there is no Sixth Amendment right to counsel." *Goonsuwan v. Ashcroft*, 252 F.3d 383, 385 n.2 (5th Cir. 2001). Although the Fifth Circuit "has repeatedly assumed without deciding that an alien's claim of ineffective assistance may implicate due process concerns under the Fifth Amendment," *Mai v. Gonzales*, 473 F.3d 162, 165 (5th Cir. 2006), "[w]hen there is no due process right to the ultimate relief sought, there is no due process right to effective assistance of counsel in pursuit of that relief." *Perez-Macedo v. Holder*, 405 Fed. App'x 828, 829 (quoting *Gutierrez–Morales v. Homan*, 461 F.3d 605, 609 (5th Cir. 2006)).

Gene's Machine has conceded that it has no Sixth Amendment right to counsel with respect to any of its I-140 petitions. (Dkt. No. 10 at 12—13.) Gene's Machine has also conceded that is does not have any right to an approved I-140 petition. (Dkt. No. 10 at 7.)[3] However, again citing the Fifth Circuit's decision in *Ayabandejo*, 517 F.3d 273, Gene's Machine claims it does have a Fifth Amendment right to counsel because, as "U.S. employer," it has "a liberty or property right in the non-discretionary processing of the I-140 application that it filed." (Dkt. No. 10 at 13.)

Just as the *Ayabandejo* decision did not hold that an alien beneficiary has standing to contest the denial of an I-130 petition, the *Ayabandejo* opinion makes no mention of liberty interests, property interests, or a right to counsel under the Fifth Amendment as they pertain to either I-130 or I-140 petitions. To the contrary, because Gene's Machine admittedly has no due process right to an approved I-140 petition, it "has 'no due process right to effective assistance of counsel in pursuit of that relief.'" *See Perez-Macedo*, 405 Fed App'x at 829.

In sum, the Court finds that Gene's Machine was not entitled to equitably toll the validity of its 2007 labor certification, and it was not arbitrary, capricious, or unreasonable for USCIS and USCIS—TSC to refuse to process Gene's Machine's May 2009 I-140 petition without considering whether ineffective assistance of counsel caused the untimely filing of its prior I-140 petitions. Accordingly, Gene's Machine's claims against Defendants USCIS and USCIS—TSC are **DISMISSED**.

---

3. Consistent with this concession, the court in *Cost Saver Management, LLC. et al. v. Janet Napolitano, et al.*, Civ. No. 2:10-cv-02105-JST-CW (C.D. Cal. June 7, 2011), recently ruled that a company petitioning for a visa on behalf of an alien does not have a liberty or property interest in obtaining an approved visa petition or the alien beneficiary's future employment. *Id.* at 12—13. Specifically, the court ruled that because a petitioning company does not have an entitlement to the visa—which is required to claim a protected interest in such a benefit—it cannot have a constitutionally protected property interest in the visa. *See id.*

As a final matter, although Plaintiffs' Original Complaint does not explicitly allege any causes of action against Defendant DHS, to the extent Gene's Machine seeks to hold DHS liable for the actions of USCIS and/or USCIS—TSC, those claims are also **DISMISSED**.

## VI. Conclusion

For the aforementioned reasons, Defendant's Motion to Dismiss is **GRANTED.**

It is so **ORDERED**.

**SIGNED** this 28th day of March, 2012.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE